UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PAUL SHABANOFF,**
    Debtor

Chapter 7
Case No. 05-18402-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**PAUL SHABANOFF,**
    Plaintiff
v.

Adv. P. No. 05-1543

**DAVID MEDOFF, MASSACHUSETTS GENERAL
HOSPITAL, ELIZABETH SHABANOFF,
LISA A. RUGGIERI, and JODY C. SHULMAN,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matters before the Court are the "Motion to Dismiss Adversary Proceeding as It Relates to Her or Alternatively, for Entry of Partial Summary Judgment," filed by Jody C. Shulman, Esq. ("Shulman"), and the "Debtor's Opposition and Cross-Motion for Summary Judgment against Defendant Shulman as to Liability Only." The Court heard the motions on January 31, 2006 and took them under advisement. The issues presented are whether Shulman violated the automatic stay imposed by 11 U.S.C. § 362(a), and, if so,

1

what damages, if any, the Debtor sustained.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On September 14, 2005, Paul Shabanoff (the "Debtor"), acting pro se, filed a voluntary petition under Chapter 7 of the Bankruptcy Code, together with Schedules and a Statement of Financial Affairs. On Schedule F-Creditors Holding Unsecured Non Priority Claims, the Debtor listed Shulman with a claim in the sum of $2,200.

At the time he filed his Chapter 7 case, the Debtor was the defendant in a divorce proceeding in the Norfolk Probate and Family Court, Department of the Trial Court. On February 10, 2005, that court issued a Temporary Order in which it appointed Dr. David Medoff Guardian Ad Litem and Shulman Special Master to Sell Real Estate. In the Temporary Order, the Probate Court directed that "[b]y agreement of the parties, the marital home located at 10 Mohegan Street, Norfolk, MA shall be immediately placed on the market for sale," and further directed the parties to cooperate with the sale. The Probate Court authorized Shulman to be paid her usual hourly rate for work necessary to sell the home, and it authorized her to be paid from the gross sale proceeds. The Probate Court stated:

> If it is determined that one party has created additional work (i.e. due to non-cooperation) for the Special Master then that person shall bear the burden of additional costs. *The Special Master is authorized to pay customary closing costs, broker's fee, Guardian ad Litem and herself,* after providing a bill to each party, and place net proceeds in an escrow in her name.

Temporary Order, dated February 10, 2005.

On September 15, 2005, the day after he filed his bankruptcy petition, the Debtor

2

transmitted, by facsimile, a copy of his petition to Shulman at her law office. On the fax cover sheet, the Debtor referenced his bankruptcy case number and advised: "Please see the attached documents [sic]." Additionally, he checked one of several boxes, namely the one denominated "For Review." In an Affidavit, he stated "[a]ccording to my records, the fax was received by Defendant Shulman's office."

The bankruptcy court issued, on September 19, 2005, a "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors & Deadlines" (the "Section 341 Meeting Notice"). On the same day, the Debtor stated, in his Affidavit, that he filed a Suggestion of Bankruptcy in his divorce proceeding, which was pending in the Norfolk Probate and Family Court at the time he filed his bankruptcy petition. There is no indication that the Debtor served the Suggestion of Bankruptcy on any of the parties involved in the divorce proceeding, including Shulman.

On September 21, 2005, Shulman filed a Complaint for Contempt against the Debtor in the Probate Court, seeking legal fees in the sum of $2,283.75 which she incurred in selling the marital home. In her Affidavit, she stated that she "was relocating out of state" and that her "last day of work at the Law Offices of Dane M. Shulman was September 30, 2005." She also stated that when she filed her Complaint for Contempt in the Probate Court she "was unaware that the Mr. Shabanoff [sic] had already filed a bankruptcy petition," adding that "[t]o the extent that Mr. Shabanoff claims to have sent any notice of his bankruptcy petition to my former office prior to September 21, 2005, I was not aware

3

that any such notice had been sent or the contents of any such notice."[1] She also stated that she filed her Complaint for Contempt because she was aware that the Probate Court had scheduled a hearing for Monday, September 26, 2005. The summons issued by the Probate Court advised the Debtor that he was ordered to appear on September 26, 2005 at 8:30 a.m.

This Court takes judicial notice that on September 21, 2005, the same day Shulman filed her Complaint for Contempt in the Probate Court, the Bankruptcy Noticing Center served by first class mail the Section 341 Meeting Notice, with the date and time of the section 341 meeting, on the Debtor's creditors, including Shulman. *See* Docket Entry #7.

Shortly after filing his bankruptcy petition, the Debtor retained counsel. His counsel notified Shulman of the Debtor's bankruptcy filing by letter dated September 22, 2005, which he transmitted to her by facsimile. In the letter, Debtor's counsel stated the following:

---

[1] Specifically, in her Affidavit, she stated:
On or about August 2005, the marital home was sold, and my appointment was completed. Due to a last minute attachment on the marital home from Husband's mother, there were no net proceeds from the marital home.

***

As of September 21, 2005, Husband had not paid his portion of my fee as Special Master. I was aware that the Guardian Ad Litem had also gone unpaid and had commenced a contempt action against Mr. Shabanoff some time earlier. As the Guardian Ad Litem was to be heard on his contempt action before the Norfolk Probate Court on September 26, 2005. I thought that it made sense that I file contempt complaint as well and have both matters heard before the Court on the same day for reasons of judicial economy and because my last day of work was September 30, 2005.

4

> Please be advised that I have been retained by Paul Shabinoff [sic] as it pertains to possible violations of §362 of the Bankruptcy Code. Mr. Shabinoff [sic] filed bankruptcy on September 14, 2005 . . . . According to the bankruptcy records, the notice of commencement of the case was served on parties on September 19, 2005, and you were listed as a creditor. . . .
>
> ***
>
> It is also my understanding that there was a hearing in Norfolk Probate Court on September 19, 2005, in which Attorney Bruce Kraft indicated that Mr. Shabinoff [sic] had filed bankruptcy and notified some of the parties in Probate Court. It is also my understanding that the Probate Court began to take evidence from another party until Mr. Kraft further objected and at which time the hearing was continued until September 26th. I have not had an opportunity to ascertain from my client whether you were at the hearing.

After reciting the provisions of 11 U.S.C. § 362(a)(1), (a) (6) and (h), he continued:

> . . . [B]ased upon the above, you need to, at the very least, continue your Complaint for Contempt at least thirty days to evaluate my client's position and make sure you do not violate the automatic stay any further. In the event that you chose not to do so, I will also be requesting damages, attorney's fees, costs and punitive damages against you. Mr. Hession, current divorce counsel will also request attorney's fees from the Bankruptcy court if he has to attend the Probate Court hearing on the 26th.
>
> Due to time constraints, please respond to the above request no later than today at 5:00 p.m. as to your position. At that point, if I have not heard from you, I will have no other choice but to begin preparing to file the complaint in the Bankruptcy Court. I hope this is not necessary and this matter can be resolved amicably between the parties. . . .

In response to this letter, Shulman asserted she attempted to contact Debtor's counsel on September 22, 2005 but was unable to reach him. She left him a voice mail message that she would contact him the next day, Friday, after speaking with her own counsel. On September 23, 2005, at approximately 4:00 p.m., after speaking with bankruptcy counsel, she advised the Debtor's attorney of her intent to dismiss her Complaint. Shulman, in fact,

5

dismissed her Complaint on Monday, September 26, 2005.

On September 23, 2005, at approximately 2:00 p.m., the Debtor filed a Complaint against Shulman and others, seeking, *inter alia*, a determination that they violated the automatic stay, as well as an Ex Parte Motion for Temporary Restraining Order. The Debtor alleged that as a result of the actions of the Defendants, including the actions of Shulman, he suffered actual damages by incurring the expense of attorneys' fees and costs. He also alleges that he suffered emotional distress, and he seeks damages for emotional distress.

On September 27, 2005, Judge Hillman conducted a hearing on the Ex Parte Motion for a Temporary Restraining Order and entered an order denying the motion. At the hearing, the following colloquy took place:

> MS. SHULMAN: Yes, I am attorney Jody Shulman, Your Honor. With respect to the contempt that I filed on - - I filed a contempt on Wednesday the 21$^{st}$. When I heard from Attorney Lange on Thursday, I got back to him on Friday, and I had faxed him a letter stating that as a result of the bankruptcy I'm agreeable to withdraw my contempt action , and in - -
>
> THE COURT: Okay, that diposed of - - you can stop right now.
>
> MS. SHULMAN: - - and I have a dismissal - -
>
> THE COURT: If you're withdrawing your contempt action, then you're out of here.
>
> MS. SHULMAN: And I had just - - I had asked that I should be - - there was a verified complaint - - that I be removed from that, but I wasn't sure if that was - -
>
> THE COURT: Well, don't worry about it. I mean, your're - - you're withdrawing your complaint, and you're not a party to this anymore. All gone.

6

MS. SHULMAN: Thank you, Your Honor. Does the Court need a copy of the dismissal?

THE COURT: I do not. I'll take your representation.

Later in the hearing, Judge Hillman, in response to a request from one of the other Defendants to be removed from the Debtor's Complaint, stated: "Well, I can't do that on the papers before me today. All I have today is the motion for a TRO, and that's the only thing I can deal with, and I won't have to deal with anything else because it's Judge Feeney's case, and if you do something it will go back to her."

The Debtor subsequently dismissed his Complaint against all Defendants except Shulman, thus precipitating Shulman's Motion to Dismiss.

### III. DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056. This standard for the entry of summary judgment is well known and need no explication in this case.

#### B. Applicable Law

Section 362(a) operates as a stay applicable to all entities of, *inter alia*, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could

7

have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title," as well as "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1), (6). The United States Court of Appeals for the First Circuit has emphasized the significance of the automatic stay. For example, in Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969 (1st Cir. 1997), it stated:

> The automatic stay is among the most basic of debtor protections under bankruptcy law. See Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986); see also S.Rep. No. 95-989, at 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840. It is intended to give the debtor breathing room by "stop[ping] all collection efforts, all harassment, and all foreclosure actions." H.R.Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; see also Holmes Transp., 931 F.2d at 987; In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir. 1982).
>
> The stay springs into being immediately upon the filing of a bankruptcy petition: "[b]ecause the automatic stay is exactly what the name implies–'automatic'--it operates without the necessity for judicial intervention." Sunshine Dev., Inc. v. FDIC, 33 F.3d 106, 113 (1st Cir. 1994). It remains in force until a federal court either disposes of the case, see 11 U.S.C. § 362(c)(2), or lifts the stay, see id. § 362(d)- (f). This respite enables debtors to resolve their debts in a more orderly fashion, see In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994), and at the same time safeguards their creditors by preventing "different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." Sunshine Dev., 33 F.3d at 114; see generally 3 Collier on Bankruptcy ¶ 362.03 (15th rev. ed. 1996).
>
> In order to secure these important protections, courts must display a certain rigor in reacting to violations of the automatic stay. See Kalb v. Feuerstein, 308 U.S. 433, 438-39, 60 S.Ct. 343, 345-46, 84 L.Ed. 370 (1940); Holmes Transp., 931 F.2d at 987-88; Smith Corset Shops, 696 F.2d at 976. . . .

8

107 F.3d at 975-76. Likewise, in <u>Fleet Mortg. Group, Inc. v. Kaneb</u>, 196 F.3d 265 (1st Cir. 1999), the court articulated the standard to be employed for stay violations involving individual debtors under section 362(h) of the Bankruptcy Code, applicable to cases filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Former section 362(h) provided that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). In <u>Kaneb</u>, the First Circuit stated:

> A willful violation does not require a specific intent to violate the automatic stay.
>
> The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation. See <u>Goichman v. Bloom (In re Bloom )</u>, 875 F.2d 224, 227 (9th Cir. 1989); see also <u>Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)</u>, 902 F.2d 1098, 1105 (2d Cir. 1990); <u>Cuffee v. Atlantic Bus. and Community Dev. Corp. (In re Atlantic Business and Community Corp.)</u>, 901 F.2d 325, 329 (3d Cir. 1990). In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate. See <u>Homer Nat'l Bank v. Namie</u>, 96 B.R. 652, 654 (W.D. La. 1989). The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay. See <u>Mitchell Const. Co., Inc. v. Smith (In re Smith)</u>, 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995).

196 F.3d at 269.

The bankruptcy court in <u>In re Flack</u>, 239 B.R. 155 (Bankr. S. D. Ohio 1999), described the applicable burden as follows:

> [D]ebtors bear the burden of proof to establish by a preponderance of evidence the following elements: (1) that a bankruptcy petition was filed, (2)

9

that the debtors are "individuals" under the automatic stay provision, (3) that the creditors received notice of the petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtors suffered damages.

Id. at 162-63. See also Heghmann v. Hafiani (In re Heghmann), 316 B.R. 395, 404-05 (B.A.P. 1st Cir. 2004). Thus, knowledge of the petition is the equivalent of knowledge of the automatic stay.

There are, however, exceptions to the automatic stay, and several of those exceptions touch on this case. For example, section 362(b) excepts from the stay imposed under section 362(a) "the commencement or continuation of an action or proceeding for -- . . . the collection of alimony, maintenance, or support from property that is not property of the estate." 11 U.S.C. § 362(b)(2)(B). Additionally, the majority of courts considering the dischargeability of guardian ad litem fees have held that a debt for guardian ad litem fees incurred in a custody proceeding and ordered by the state court to be paid by the debtor directly to the guardian ad litem are nondischargeable support under 11 U.S.C. § 523(a)(5). Madden v. Staggs (In re Staggs), 203 B.R. 712, 717 (Bankr. W.D. Mo. 1996). "Creditors in stay violation litigation bear the burden of proof by a preponderance of the evidence on any claimed defenses including: (1) immunities, (2) jurisdiction-denying doctrines, and (3) inapplicability of the stay against the creditors' actions." Flack, 239 B.R. at 163 (citation omitted).

If the creditor's conduct is not excepted from the automatic stay, once the creditor learns of the stay, the burden shifts to the creditor to discontinue collection efforts. Creditors have an affirmative duty under section 362 to take steps necessary to stop all

10

collection activities against a debtor. <u>In re Henry</u>, 328 B.R. 664, 668 (Bankr. E.D. N.Y. 2005) (citing <u>Sucre v. MIC Leasing Corp. (In re Sucre)</u>, 226 B.R. 340, 347 (Bankr. S.D. N.Y. 1998)).

C. <u>Analysis</u>

The Court finds that a genuine issue of material fact exists as to Shulman's knowledge of the automatic stay. Moreover, the Court finds that Judge Hillman did not determine whether Shulman violated or did not violate the automatic stay. Although his colloquy with Shulman was susceptible of the interpretation that he intended Shulman to be dismissed from the proceeding, he later clarified that the only action he was taking was with respect to the Motion for a Temporary Restraining Order.

Shulman denied any knowledge of the facsimile transmission made by the Debtor to her office on September 15, 2005. She did not couple this denial with any information about how facsimiles were handled in her former law office. The Court finds that her denial of receipt of the September 15, 2005 facsimile is insufficient to resolve the factual issue in her favor. If Shulman did not have notice of the bankruptcy filing as a result of the Debtor's facsimile, then the filing of her Complaint for Contempt was not a willful violation of the stay because the Bankruptcy Noticing Center did not mail the Section 341 Meeting Notice to creditors until the day she filed the Complaint for Contempt. *See* <u>Kaneb</u>, 196 F.3d at 269.

A rebuttable presumption of receipt is created by depositing into the mail system a properly addressed and stamped letter to the party to whom the letter was addressed.

11

In re Robinson, 228 B.R. 75, 81 (Bankr. E.D. N.Y. 1998) (citing Cablevision Systems Corp. v. Malandra (In re Malandra), 206 B.R. 667, 672-73 (Bankr. E.D. N.Y. 1997), and Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932)). Additionally, "[a] debtor may rely on the Court's certificate of mailing to invoke the presumption of receipt." Id. at 81.

The parties have not addressed, let alone briefed, the issue of whether the presumption of receipt applies to a facsimile transmission or whether an affidavit containing a denial of receipt is sufficient to rebut the presumption of receipt. Although courts are divided on the quantum of evidence required, testimony denying receipt coupled with evidence of standardized procedures may be sufficient. Cf. Robinson, 228 B.R. at 82.

## IV. CONCLUSION

In view of the existence issues of material fact, the Court shall enter an order denying Shulman's Motion to Dismiss, sustaining the Debtor's Opposition to the Motion to Dismiss, and denying the Debtor's Motion for Partial Summary Judgment.

By the Court,

*/s/ Joan N. Feeney*
Joan N. Feeney
United States Bankruptcy Judge

Dated: February 28, 2006
cc: Joseph J. Lange, Esq., Richard N. Gottllieb, Esq., Jody C. Shulman, Esq.